OPINION
{¶ 1} Brian Moonshower, appellant herein, appeals the judgments of the Van Wert County Court of Common Pleas, Juvenile Division, adjudicating his adopted daughter, Alyssa Moonshower, "dependent" and "abused" pursuant to R.C. 2151.04 and R.C.2151.031, and his biological daughter, Tanner Moonshower, "dependent" pursuant to R.C. 2151.04.
 {¶ 2} In January 2003, Alyssa, then eleven years old, reported to the Van Wert County Sheriff's Department that her father had touched her inappropriately. The Sheriff's office called the Van Wert County Children's Services Board, and Brooke Tavanio, an investigator with DJFS, conducted an investigation.
 {¶ 3} Alyssa stated to Ms. Tavanio that Brian had touched her pubic area as well as her breasts. Ms. Tavanio questioned Brian, who denied any wrongdoing, but admitted that while engaged in "playful wrestling" he did grab Alyssa's breast. Alyssa later indicated that she thought the touching of her breasts was accidental, but the specific details she reported did not change. At the conclusion of her investigation, Ms. Tavanio indicated that Brian had touched Alyssa inappropriately; her agency did not file a complaint at that time because there was not enough proof of a pattern of wrongful behavior.
 {¶ 4} On October 15, 2003 DJFS received reports from the principal of Alyssa's school and from the Sheriff's department that Brian had sexually abused Alyssa. The reports alleged that Brian Moonshower had digitally penetrated Alyssa's vagina, performed oral sex on her and had vaginal intercourse with her.
 {¶ 5} Mark Spieles, a caseworker with DJFS, interviewed Alyssa, Brian, and Monica Moonshower, Alyssa's mother, on October 15, 2003. Following his investigation, DJFS filed the underlying complaint in this action on November 18, 2003, alleging that Alyssa was "abused" as defined in R.C. 2151.031 and "dependent" as defined in R.C. 2151.04.
 {¶ 6} The trial court held an adjudicatory hearing pursuant to R.C. 2151.28. At the hearing, Alyssa testified to the underlying events. She stated that Monica, her mother, worked third shift during the week, meaning she was gone Sunday through Thursday nights from anywhere between 5:30 and 8:00 p.m. until three or four o'clock in the morning. During those periods, she was alone at home with Brian and her younger half-sister, Tanner. Tanner suffers from congenital myopathy, which has left her bedridden and in need of 24-hour care.
 {¶ 7} Alyssa testified that beginning in September 2003 Brian would come into her room right before bedtime attempting to show her pornography over the Internet and on television. She testified that he then began touching her inappropriately against her wishes. He began by touching her vagina, which led to more extensive sexual activity. He began digitally penetrating her vagina, then engaged in oral sex, and finally penile penetration. She testified that he had sex with her between six and nine times.
 {¶ 8} Although physical examinations were performed after Alyssa reported the events, the results were negative and there was no indication of physical abuse. Evidence was taken from her bedroom, including her mattress, but tests on these items provided no physical evidence of sexual activity.
 {¶ 9} The trial court found, by clear and convincing evidence, that Alyssa had been sexually abused. This determination was based solely on testimony at the adjudicatory hearing, as there was no physical evidence to corroborate her story. According to the trial court, Alyssa's testimony was "graphic and accurate." The trial court's judgment entry states:
Frankly, the court finds it almost impossible for a twelveyear old to be able to give such an accurate description withoutactual participation. . . . She described how she felt (hurt),seeing blood and "white stuff," use of condoms, and the routineof the abuse.
 {¶ 10} The trial court found this testimony more credible than Brian's denials. Based solely on this testimony, the court found by clear and convincing evidence that Alyssa Moonshower had been abused as defined in R.C. 2151.031 and that she is dependent as defined in R.C. 2151.04. The trial court also found that Tanner was dependent as defined in R.C. 2151.04 because she was residing in a household in which a parent had abused her sibling.
 {¶ 11} Brian Moonshower now appeals, challenging the finding of the trial court that Alyssa had been abused and is dependent. He asserts as the sole assignment of error:
The trial court's finding that by clear and convincingevidence the minor children are adjudicated dependent and/orabused is against the manifest weight of the evidence.
 {¶ 12} At the outset we note that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes (1997), 79 Ohio St.3d 46, 48, citing In re Murray (1990), 52 Ohio St.3d 155, 157. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. In re Hayes,
supra; In re Murray, supra. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." Inre Hayes, supra (citation omitted). Thus, it is within these constructs that we now examine this assignment of error.
 {¶ 13} Decisions concerning child custody matters rest within the sound discretion of the trial court. Miller v. Miller
(1988), 37 Ohio St.3d 71. The judge, acting as the trier of fact, is in the best position to observe the witnesses, weigh evidence and evaluate testimony. In re Brown (1994), 98 Ohio App.3d 337. Therefore, we must not substitute our judgment for that of the trial court's absent an abuse of discretion. Miller,37 Ohio St.3d at 74.
 {¶ 14} A finding of abuse or dependency must be supported by clear and convincing evidence. R.C. 2151.35. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear andunequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477, citing Merrick v. Ditzler (1915), 91 Ohio St. 256. It is that degree of proof "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re Utz, Crawford App. No. 3-2000-06, 2000-Ohio-1710 (citation omitted).
 {¶ 15} The appellate court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this degree of proof. Cross, supra (citations omitted). The trial court adjudication will be overruled if it is against the manifest weight of the evidence; there must be sufficient credible evidence to support the trial court's adjudication. In re Pieper Children (1993), 85 Ohio App.3d 318,327.
 {¶ 16} When reviewing whether the trial court judgment was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. In doing so, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Adkins (Sept. 24, 1999), Hancock App. No. 5-97-31, 1999 WL 797144, citing State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; Thompkins,78 Ohio St.3d at 387, 678 N.E.2d 541.
 {¶ 17} Brian claims that the trial court's decision was against the manifest weight of the evidence because it was based solely on the testimony of Alyssa. He argues that his testimony, and the lack of any physical evidence, demonstrates that the trial court lost its way in finding that Brian sexually abused Alyssa.
 {¶ 18} As the trial court stated in its judgment entry, this was clearly a case of the victim's allegation and the defendant's denial. The trial court weighed the credibility of the witnesses, including the testimony of both Brian and Alyssa, and clearly determined that Alyssa's was the more reliable testimony. As stated previously, the trial judge is in the best position to view the testimony and weigh the credibility of witnesses by observing their demeanor. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Both Brian and Alyssa testified at the hearing, and the trial court was in the best position to view their testimony and weigh their credibility. We find that the trial court did not abuse its discretion in finding that Alyssa's testimony was more credible.
 {¶ 19} Moreover, Alyssa's testimony was supported by other evidence presented to the trial court. Monica Moonshower, the victim's mother, corroborated the victim's testimony that Brian watched pornographic websites and movies. The two caseworkers, Ms. Tavanio and Mr. Spieles, testified as well, and reported Alyssa's story was virtually identical to Alyssa's testimony at the hearing. This evidence supports to some degree the credibility of Alyssa's testimony.
 {¶ 20} Finally, Brian asserts that the lack of any physical evidence is conclusive proof that his testimony is more credible than Alyssa's. We believe this assertion is unfounded.
 {¶ 21} The record includes the expert testimony of Michael E. Ruhlen, M.D., who runs a hospital clinic which evaluates and treats victims of sexual and physical abuse. His testimony indicates that the lack of physical evidence is not dispositive of the issue of whether Alyssa was actually abused. He stated that there is no corroborating physical evidence in 90% of abuse cases where there is admitted abuse or a third party witness. He also indicated that the three week time period between the physical examination and the last time Alyssa testified she was abused would give any injuries sufficient time to heal so that they would not show up in the physical examination. The results of the examination were ultimately inconclusive, and it was reasonable for the trial court to conclude that the lack of physical evidence did not affect the credibility of Alyssa's testimony.
 {¶ 22} In sum, the trial court had sufficient evidence to come to a firm belief or conclusion that Brian sexually abused Alyssa. Moreover, based on the testimony and evidence presented at the adjudicatory hearing, we cannot find that the trial court lost its way or created a miscarriage of justice by adjudicating Alyssa an abused and dependent child pursuant to R.C. 2151.031
and R.C. 2151.04.
 {¶ 23} Based on the foregoing, the assignment of error is overruled and the judgment of the trial court is affirmed.
Judgments affirmed.
 Cupp and Rogers, JJ., concur.